1

2

3

4

5

6

7

The Honorable Richard A. Jones

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:11-cv-00485 RAJ |
| | ) | |
| v. | ) | **BARNES & NOBLE, INC.'S AND** |
| | ) | **BARNESANDNOBLE.COM LLC'S** |
| BARNES & NOBLE, INC., | ) | **ANSWER, AFFIRMATIVE** |
| BARNESANDNOBLE.COM LLC, HON HAI | ) | **DEFENSES, AND** |
| PRECISION INDUSTRY CO., LTD., | ) | **COUNTERCLAIMS TO** |
| FOXCONN INTERNATIONAL HOLDINGS | ) | **PLAINTIFF'S COMPLAINT FOR** |
| LTD., FOXCONN ELECTRONICS, INC., | ) | **PATENT INFRINGEMENT** |
| FOXCONN PRECISION COMPONENT | ) | |
| (SHENZHEN) CO., LTD., and INVENTEC | ) | **JURY DEMANDED** |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants Barnes & Noble, Inc. and barnesandnoble.com LLC (collectively, "Barnes

& Noble"), with knowledge as to their own acts, and on information and belief as to the acts

of others, by their undersigned attorneys, hereby reply to plaintiff Microsoft Corporation's

("Microsoft's") Complaint for Patent Infringement filed on March 21, 2011.

Microsoft's complaint alleges that Barnes & Noble's Nook™ and Nook Color™ e-

book reader products infringe certain claims of U.S. Patent Nos. 5,778,372 (the "'372

patent"), 6,339,780 (the "'780 patent"), 5,889,522 (the "'522 patent"), 6,891,551 (the "'551

patent"), and 6,957,233 (the "'233 patent"). These allegations appear to center on the

*Barnes & Noble, Inc.'s and barnesandnoble.com*
*LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 1

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

Nook™'s and Nook Color™'s use of the Android™ Operating System.  The '372, '780, '522, '551, and '233 patents, however, do not cover, claim, or disclose the Android™ Operating System.  Instead, they claim five insubstantial and trivial features, including what Microsoft has itself described as (1) the "display of a webpage's content before the background image is received, allowing users to interact with the page faster," (2) the "superimpos[ing of] download status on top of the downloading content", (3) "easy ways to navigate through information provided by their device apps via a separate control window with tabs"; (4) "[p]rovid[ing] users the ability to annotate text without changing the underlying document"; and (5) "[p]ermit[ing] users to easily select text in a document and adjust that selection."  The Nook™ and Nook Color™ do not infringe any valid claim of the '372, '780, '522, '551, and '233 patents and none of these trivial features serve as a basis for customer demand for these products.  The subject matter embraced by the '372, '780, '522, '551, and '233 patents was not new and would have been highly obvious at the time those patents were filed.

Indeed, Microsoft is misusing these patents as part of a scheme to try to eliminate or marginalize the competition to its own Windows Phone 7 mobile device operating system posed by the open source Android™ operating system and other open source operating systems.  Microsoft's conduct directly harms both competition for and consumers of eReaders, smartphones, tablet computers and other mobile electronic devices, and renders Microsoft's patents unenforceable.

Barnes & Noble responds to the like-numbered paragraphs of Microsoft's Complaint as follows:

### PARTIES

1.      Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

2.      Barnes & Noble admits that Barnes & Noble, Inc. is a corporation organized and existing under the laws of Delaware and has a place of business at 122 Fifth Avenue,

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
*(2:11-cv-00485 RAJ) – 2*

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1    New York, New York, 10011.

2        3.      Barnes & Noble admits that barnesandnoble.com LLC is a limited liability

3    corporation organized and existing under the laws of Delaware and has a place of business at

4    122 Fifth Avenue, New York, New York, 10011.

5        4.      Barnes & Noble is without knowledge or information sufficient to form a

6    belief as to the truth of the allegations of this paragraph and, therefore, denies them.

7        5.      Barnes & Noble is without knowledge or information sufficient to form a

8    belief as to the truth of the allegations of this paragraph and, therefore, denies them.

9        6.      Barnes & Noble is without knowledge or information sufficient to form a

10    belief as to the truth of the allegations of this paragraph and, therefore, denies them.

11        7.      Barnes & Noble is without knowledge or information sufficient to form a

12    belief as to the truth of the allegations of this paragraph and, therefore, denies them.

13        8.      Barnes & Noble is without knowledge or information sufficient to form a

14    belief as to the truth of the allegations of this paragraph and, therefore, denies them.

15        9.      Barnes & Noble admits that it imports into the United States, sells within the

16    United States, and offers for sale in the United States devices known as the Nook™ and Nook

17    Color™.  Barnes & Noble admits that the Nook™ and Nook Color™ employ the Android™

18    Operating System.  Barnes & Noble admits that the Nook™ and Nook Color™ are marketed

19    and sold in the United States both at retail stores and via various websites.  Barnes & Noble

20    denies any remaining allegations set forth in this paragraph.

21                        **JURISDICTION AND VENUE**

22        10.     Paragraph 10 states legal conclusions to which no answer is required, but to the

23    extent that an answer is called for, the allegation is denied.

24        11.     Paragraph 11 states legal conclusions to which no answer is required, but to the

25    extent that an answer is called for, the allegation is denied.

26        12.     Paragraph 12 states legal conclusions to which no answer is required, but to the

27

*Barnes & Noble, Inc.'s and barnesandnoble.com*
*LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 3

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

extent that an answer is called for, Barnes & Noble admits that it has offered products for sale, sold products, and conducted business in the Western District of Washington but denies all remaining allegations set forth in this paragraph as they relate to Barnes & Noble.  Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph as they relate to the other defendants identified by Microsoft's Complaint and, therefore, denies them.

13.     Paragraph 13 states legal conclusions to which no answer is required, but to the extent that an answer is called for, the allegation is denied.

## PATENT INFRINGEMENT COUNTS

14.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph relating to ownership of the '372, '780, '522, '551, and '233 patents, and, therefore, denies them.  Barnes & Noble denies the remaining allegations set forth in this paragraph.

15.     Denied.

16.     Denied.

17.     Denied.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 5,778,372

18.     Barnes & Noble incorporates by reference its responses to the allegations set forth in paragraphs 1-17.

19.     Barnes & Noble admits that what purports to be copy of the '372 patent was attached to Microsoft's Complaint as Exhibit A.  Barnes & Noble admits that the '372 patent, on its face, indicates an issue date of July 7, 1998, but denies that the '372 patent was properly issued.  Barnes & Noble also admits that the '372 patent is entitled "Remote Retrieval and Display Management of Electronic Document with Incorporated Images."  Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the remaining

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 4

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

allegations of this paragraph and, therefore, denies them.

20.     Denied.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 6,339,780

21.     Barnes & Noble incorporates by reference its responses to the allegations set forth in paragraphs 1-20.

22.     Barnes & Noble admits that what purports to be copy of the '780 patent was attached to Microsoft's Complaint as Exhibit B.  Barnes & Noble admits that the '780 patent, on its face, indicates an issue date of January 15, 2002, but denies that the '780 patent was properly issued.  Barnes & Noble also admits that the '780 patent is entitled "Loading Status in a Hypermedia Browser Having a Limited Available Display Area."  Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

23.     Denied.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 5,889,522

24.     Barnes & Noble incorporates by reference its responses to the allegations set forth in paragraphs 1-23.

25.     Barnes & Noble admits that what purports to be copy of the '522 patent was attached to Microsoft's Complaint as Exhibit C.  Barnes & Noble admits that the '522 patent, on its face, indicates an issue date of March 30, 1999, but denies that the '522 patent was properly issued.  Barnes & Noble also admits that the '522 patent is entitled "System Provided Child Window Controls."  Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

26.     Denied.

*Barnes & Noble, Inc.'s and barnesandnoble.com*
*LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 5

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1

2

**COUNT IV**

**INFRINGEMENT OF U.S. PATENT NO. 6,891,551**

3

4

27.     Barnes & Noble incorporates by reference its responses to the allegations set forth in paragraphs 1-26.

5

6

7

8

9

10

11

28.     Barnes & Noble admits that what purports to be copy of the '551 patent was attached to Microsoft's Complaint as Exhibit D.  Barnes & Noble admits that the '551 patent, on its face, indicates an issue date of May 10, 2005, but denies that the '551 patent was properly issued.  Barnes & Noble also admits that the '551 patent is entitled "Selection Handles in Editing Electronic Documents."  Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

12

29.     Denied.

13

14

**COUNT V**

**INFRINGEMENT OF U.S. PATENT NO. 6,957,233**

15

16

30.     Barnes & Noble incorporates by reference its responses to the allegations set forth in paragraphs 1-29.

17

18

19

20

21

22

23

31.     Barnes & Noble admits that what purports to be copy of the '233 patent was attached to Microsoft's Complaint as Exhibit E.  Barnes & Noble admits that the '233 patent, on its face, indicates an issue date of October 18, 2005, but denies that the '233 patent was properly issued.  Barnes & Noble also admits that the '233 patent is entitled "Method and Apparatus for Capturing and Rendering Annotations for Non-Modifiable Electronic Content."  Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

24

32.     Denied.

25

26

27

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 6

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

**DEMAND FOR JURY TRIAL**

33.     Barnes & Noble admits that Microsoft's Complaint, on its face, purports to set forth a request for a trial by jury of all issues properly triable by jury.

**<u>AFFIRMATIVE DEFENSES</u>**

**First Affirmative Defense**

**(Unenforceability Due to Patent Misuse)**

<u>Introduction</u>

1.     Microsoft's claims of infringement of the '372, '780, '522, '551, and '233 patents against Barnes & Noble are barred by the doctrine of patent misuse.

2.     Microsoft has impermissibly broadened the physical scope of the '372, '780, '522, '551, and '233 patents in furtherance of a plan or scheme orchestrated by Microsoft and its agents to eliminate or marginalize the competition to Microsoft's own Windows Phone 7 mobile device operating system posed by the open source Android™ Operating System and other open source operating systems.  As part of this scheme, Microsoft has asserted patents that extend only to arbitrary, outmoded, or non-essential design features, but uses these patents to demand that every manufacturer of an Android-based mobile device take a license from Microsoft and pay exorbitant licensing fees or face protracted and expensive patent infringement litigation.  The asserted patents do not have a lawful scope sufficient to control the Android™ Operating System as Microsoft is attempting to do, and Microsoft's misuse of these patents directly harms both competition for and consumers of all eReaders, smartphones, tablet computers and other mobile electronic devices.

<u>Microsoft's Attempt to Control the Android Operating System</u>

3.     Microsoft did not invent, research, develop, or make available to the public mobile devices employing the Android™ Operating System and other open source operating systems, but nevertheless seeks to dominate something it did not invent.  On information and

*Barnes & Noble, Inc.'s and barnesandnoble.com*
*LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 7

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

belief, Microsoft intends to take and has taken definite steps towards making competing operating systems such as the Android™ Operating System unusable and unattractive to both consumers and device manufacturers through exorbitant license fees and absurd licensing restrictions that bear no relation to the scope and subject matter of its own patents.

4.      On information and belief, to perpetuate this scheme, Microsoft and its agents, including spokesman and chief executive officer Mr. Steven Ballmer, have publicly stated that through its patents Microsoft can dominate, control, and exclude from the market the Android™ Operating System, other open source operating systems, and open source applications such as Google Chrome.  These statements are unjustified in view of the scope of Microsoft's patents.  Moreover, neither Microsoft nor Mr. Ballmer has ever identified to the American public the basis for these grand assertions of dominance.

5.      On information and belief, Microsoft intends to utilize its patents to control the activities of and extract fees from the designers, developers, and manufacturers of devices, including tablets, eReaders, and other mobile devices, that employ the Android™ Operating System.

6.      On information and belief, Microsoft has falsely and without justification asserted that its patents somehow provide it with the right to prohibit device manufacturers from employing new versions of the Android™ Operating System, or third party software.

7.      Without support or justification, Microsoft has communicated to the public through press releases and other public statements (including press releases relating to this very action) that the Android™ Operating System generally infringes Microsoft's patents, and that all device manufacturers employing the Android™ Operating System must either pay Microsoft's exorbitant licensing fees or face costly and protracted patent infringement litigation.

8.      On information and belief, Microsoft's assertion of complete and total control and dominance over the Android™ Operating System is entirely unjustified and finds no root

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 8

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

in any supposed patents identified or even possessed by Microsoft.

9.     On information and belief, as part of Microsoft's recently announced agreement with Nokia to replace Nokia's Symbian operating system with Microsoft's own mobile device operating system, Microsoft and Nokia discussed and apparently agreed upon a strategy for coordinated offensive use of their patents.  Indeed, in videotaped remarks made two days after the Microsoft-Nokia agreement was announced, Nokia's CEO Stephen Elop confirmed that Microsoft and Nokia had discussed how their combined intellectual property portfolio is "remarkably strong" and that Microsoft and Nokia intended to use this combined portfolio both defensively and offensively.[1]  This type of horizontal agreement between holders of significant patent portfolios is per se illegal under the antitrust laws, threatens competition for mobile device operating systems and is further evidence of Microsoft's efforts to dominate and control Android and other open source operating systems.

Microsoft's Initial Approach to Barnes & Noble

10.     In furtherance of its scheme to dominate, marginalize, and eliminate commercial use of the Android™ Operating System, Microsoft initially contacted Barnes & Noble in 2010, through an e-mail from Rainer Kuehling, Microsoft's Senior Manager of the Microsoft Intellectual Property Licensing Office, to William Lynch, then President of Barnes & Noble.com, stating that Microsoft would like to meet with Barnes & Noble to discuss "patent issues relating to Barnes & Nobles' eReader."

11.     Barnes & Noble and Microsoft then met on July 20, 2010, at the New York offices of Barnes & Noble.com.  The meeting was attended by Dick Greeley, Director of Licensing for the Microsoft Intellectual Property Licensing Office, Carl Brandt, Associate General Counsel for IP and Litigation for Microsoft, Tony Astarita, Vice President of Product Development for Barnes & Noble.com, Bradley A. Feuer, then Acting General Counsel of Barnes & Noble, and outside counsel for Barnes & Noble.  At the meeting, Microsoft alleged

---

[1] http://www.techeye.net/business/swingin-stephen-elop-confirms-nokia-ms-deal-is-about-patent-protection

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

that the Nook™ infringed six patents purportedly owned by Microsoft.  Microsoft had prepared claim charts purportedly detailing the alleged infringement but insisted that it would only share the detailed claim charts if Barnes & Noble agreed to sign a non-disclosure agreement ("NDA") that would cover the claim charts as well as all other aspects of the parties' discussions.  Noting that the patents were public and that the infringement allegations pertained to Barnes & Noble's public product, Barnes & Noble refused to sign an NDA.  Insisting that an NDA was necessary, Microsoft discussed the alleged infringement on a high-level basis only.  Microsoft nevertheless maintained that it possessed patents sufficient to dominate and entirely preclude the use of the Android™ Operating System by the Nook™.  Microsoft demanded an exorbitant royalty (on a per device basis) for a license to its patent portfolio for the Nook™ device and at the end of the meeting Microsoft stated that it would demand an even higher per device royalty for any device that acted "more like a computer" as opposed to an eReader.

12.   On August 3, 2010, Microsoft sent Barnes & Noble an email purportedly following up on the July 20, 2010 meeting.  The email attached a presentation that contained high level, publicly available information as well as a list of the patents that Microsoft stated were "exemplary patents that read on the Barnes and Noble's Nook device."  The presentation contained a footer stating that the presentation was "Subject to FRE 408."

13.   On August 23, 2010, Mr. Greeley sent an email to Barnes & Noble stating that Microsoft wanted to schedule a follow-up meeting with Barnes & Noble to have a "[d]etailed discussion of Microsoft patents as they pertain to the Nook" and to elicit a "[r]esponse from Barnes and Nobel [sic] to Microsoft's proposed terms."  Mr. Greeley marked the email as "Subject to FRE 408."  Mr. Greeley sent a follow-up email on August 26, 2010, requesting a response to the August 23, 2010 email.  On August 26, 2010, Mr. Feuer responded to Mr. Greeley, informing him that Mr. Astarita was leaving the company and that Barnes & Noble needed to find his replacement for these matters.  Additionally, Mr. Feuer stated in his email

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 10

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

that "please keep in mind that we do not consider any of our conversations to be confidential."

14.     On September 30, 2010, Mr. Greeley sent an email to Mr. Feuer regarding scheduling a further meeting and also stating that if Barnes & Noble would not agree to consider the claim charts as confidential then Microsoft would "need to limit the discussion to the patent numbers" and that "[w]e also want to discuss the licensing terms and would assume that these discussions and any shared agreements will be treated as confidential."

15.     Microsoft and Barnes & Noble exchanged a series of emails attempting to find an agreeable date to meet, which was eventually set for December 16, 2010 at the Barnes & Noble headquarters in New York.  Mr. Greeley exchanged several emails with Mr. Gene DeFelice, who was newly appointed Barnes & Noble General Counsel, as well as Mr. Feuer, pursuant to which Mr. Greeley stated that he had located existing NDAs between Barnes & Noble and Microsoft covering matters that were totally unrelated to the patent issues under discussion.  In a November 30, 2010 email to Mr. DeFelice and Mr. Feuer, Mr. Greeley wrote that the email was subject to "FRE 408 and Microsoft-Barnes & Noble Non-Disclosure Agreement."  Mr. Greeley further stated that Microsoft had not provided the full claim charts to Barnes & Noble because Mr. Feuer "refused to treat them as confidential information under our NDA."

16.     On December 3, 2010, Mr. DeFelice responded to Mr. Greeley's November 30, 2010 email stating, among other things, "I noticed that the heading of your email referred to a Barnes & Noble Non-Disclosure Agreement.  As you know full well, there is no such agreement, and as you correctly note in the body of your email, Brad Feuer has been clear with Microsoft that we are not willing to sign or otherwise agree to a Non-Disclosure Agreement.  Therefore, we ask you to please not try to cloud the record with inaccurate characterizations."  Mr. DeFelice further noted that, as Mr. Feuer had previously advised Microsoft, given the fact that the patents are public "B&N doesn't see anything confidential in allegations of why our marketed device or devices infringe a public patent."

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

17.     On December 7, 2010, Mr. Greeley sent an email to Mr. DeFelice and Mr. Feuer confirming the December 16, 2010 meeting and acknowledging that "as per your email, we will not be having this conversation under NDA."

18.     The December 16, 2010 meeting between Microsoft and Barnes & Noble was attended by Mr. Greeley and Mr. Brandt, on behalf of Microsoft, and Mr. DeFelice, Mr. Feuer, and Mr. Jeffrey Snow, on behalf of Barnes & Noble.  Microsoft continued to maintain that its patents were sufficient to dominate and entirely preclude the use of the Android™ Operating System by the Nook™ and also asserted that they would preclude use of Android by Barnes & Noble's new Nook Color™ product.  Barnes & Noble requested that Microsoft set forth the basis for these allegations.  Microsoft, however, continued to insist that it would not provide the basis for its allegations without first entering into a non-disclosure agreement. The parties therefore negotiated a form of NDA at this meeting entitled "Agreement" (the "Agreement").  The Agreement was very limited in scope, with "Confidential Information" defined as "any non-public claim charts provided to BN by Microsoft relating to the patents in dispute, any response(s) or discussions or product information provided by or from BN representatives."

19.     At the meeting, after the Agreement was executed, Microsoft provided Barnes & Noble with the claim charts referenced in the Agreement, which related to five of the six patents Microsoft had originally identified.

20.     Tellingly, although Microsoft had insisted on entering into an NDA covering these claim charts, the charts did not contain confidential information but instead did nothing more than set forth the published claims of certain Microsoft patents on the one hand and publicly known features purportedly employed by the open source Android™ Operating System and the Nook™ on the other hand.

<u>Microsoft's Proposed License</u>

21.     Further evincing its anticompetitive intent to dominate and render the

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

Android™ Operating System uncompetitive, on or around January 6, 2011, Mr. Dick Greeley, Microsoft's Director of Licensing, forwarded Barnes & Noble a proposed patent license agreement.

22.     Although in a cover e-mail Microsoft labeled the proposed license as "Confidential" and purportedly subject to the Agreement, the proposed patent license is in fact clearly not subject to the Agreement—which, as noted, was limited in scope to discussions concerning claim charts—or to any other non-disclosure agreement between Microsoft and Barnes & Noble.  Microsoft's attempt to cloak its abusive and anticompetitive licensing proposal in confidence by referencing a plainly inapplicable confidentiality agreement is further evidence of Microsoft's unlawful scheme to restrict competition in the mobile operating system market.

23.     The proposed patent license presumes that Microsoft possesses a portfolio of patents that dominate and control the Android™ Operating System.

24.     The proposed license would have covered the '372,'780, '522, '551, and '233 patents asserted in this action, along with other previously identified Microsoft patents, including U.S. Patent Nos. 5,579,517 ("the '517 patent"), 5,652,913 ("the '913 patent"), 5,758,352 ("the '352 patent"), 6,791,536 ("the '536 patent"), and 6,897,853 ("the '853 patent").  However, without justification, the proposed license would have severely limited, restricted, and in some cases entirely eliminated, Barnes & Noble's ability to upgrade, improve, or continue design work with Nook™ and Nook Color™.

25.     After sending the proposed license agreement, Microsoft confirmed the shockingly high licensing fees Microsoft was demanding, reiterating its exorbitant per device royalty for Nook™, and for the first time demanding a royalty for Nook Color™ which was more than double the per device royalty Microsoft was demanding for Nook™.  On information and belief, the license fees demanded by Microsoft are higher than what Microsoft charges for a license to its entire operating system designed for mobile devices,

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 13

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

Windows Phone 7.

26.     On information and belief, the proposed license agreement Microsoft sent to Barnes & Noble on or around January 6, 2011 was Microsoft's standard license agreement signed by others.

<u>The Patents at Issue</u>

27.     The patents that Microsoft has identified to date—including the patents Microsoft identified as part of the discussions between Microsoft and Barnes & Noble that preceded this litigation as well as patents on which Microsoft ultimately sued—do not warrant the dominance over an entire operating system, like the open source Android™ Operating System.   Indeed, although in its earlier discussions Microsoft claimed that the '517, '913, '352, '536, '853, and '780 patents allowed it to dominate and control the Android™ Operating System, when it initiated both the present action and a related action before the U.S. International Trade Commission, it did not allege that the Nook™ and Nook Color™ products infringe the '517, '913, '352, '536, or '853 patents, but instead limited its allegations concerning previously asserted patents to only the '780 patent.

28.     Thus, the '517, '913, '352, '536 and '853 patents appear to be nothing more than a vehicle by which Microsoft is seeking to force device manufacturers such as Barnes & Noble to enter into expensive, overly restrictive, and unjustified license agreements.  The '517, '913, '352, '536, '853, and '780 patents are the antitheses of proof that Microsoft somehow invented and has the right to control the Android™ Operating System and other open source operating systems and applications.

29.     The '517 and '352 patents deal with nothing more than compatibility between file names employed by operating systems used and sold today, and more primitive file names employed by old, unused, and outmoded operating systems.  This is of no importance to either Nook™ or Nook Color™ modern products.  Neither product infringes any valid, enforceable claims of the '517 or '352 patent.

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 14

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

30.     During the discussions, Microsoft also threatened Barnes & Noble with claims of infringement of the '536 and '853 patents which relate only to simulating mouse inputs using non-mouse devices.  The '853 patent misrepresented the state of the art at the time the patent was filed by stating that "a need exists for permitting a user to perform all operations of a mouse-type device using a stylus."  This, however, is demonstrably incorrect.  The '536 and '853 patents were filed in November 2000.  Long before that time, numerous systems had been developed that enabled computer users to simulate mouse behavior with touch input devices.  For example, U.S. Patent No. 5,327,161 to Logan et al., entitled "System and Method for Emulating a Mouse Input Device with a Touchpad Input Device" (the "'161 patent"), was issued in 1994, years before the '536 and '853 patents were even filed.  The '161 patent discloses a touchpad input device or touch-sensitive device that "can be used to replace the mouse cursor locator/input device in mouse-driven personal computers."  (Col. 1, ll. 18-20.)  The touchpad in the '161 patent performs functions of a mouse.  Further evincing the lack of inventiveness of the subject matter set forth in the '536 and '853 patents, the '161 patent noted that touchpad technology had been disclosed in patents that issued as early as *1978*.  (*See* Col. 3, ll. 15-22.)  Touchpad technology did not disappear or otherwise fade into the background in the decade between the filing of the '161 patent and Microsoft's own '536 and '853 patents.  A January, 14 1999 New York Times article entitled "Treading on the Mouse's Heels: The Oh-So-Subtle Touch Pad" describes "newer models of touch pads … that … can be trained to recognize handwritten commands."  Moreover, the described touchpad allows one to "slide the finger" across the touchpad "[f]or a large cursor movement," and, just like the '536 patent, the touchpad performs different actions depending on whether a user taps or holds his or her finger on the touchpad surface.  For instance, "[a] double tap equals a double click of the mouse" while the action to "tap once, then lower the finger and leave it down" equals a "highlight and drag."  Further, the '536 and '853 patents relate to a concept that, while long present in the prior art, is lacking in the Nook™ and Nook Color™ devices,

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 15

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

which were never designed for use with a mouse in this first instance, never simulate such an input, and thus cannot infringe any valid, enforceable claims of these patents.

31.     Microsoft also threatened Barnes & Noble with claims of infringement of the '913 patent, which relates to storing input/output access factors in a shared data structure, and which clearly could not preclude the use of an entire operating system.  The '913 patent specification is deficient with respect to a written description of the alleged invention and fails to provide sufficient detail for a person of skill in the art to make the subject matter of the claims.  This deficiency renders the patent invalid, and in any event the claims do not cover the Nook™ and Nook Color™ devices to the extent the subject matter can be understood in light of the deficiencies.  Tellingly, Microsoft was never able to fully explain how anything in the Nook™ and Nook Color™ related in any manner to the concepts set forth in the '913 patent.  Neither product  infringes the '913 patent.

32.      Of the patents Microsoft threatened Barnes & Noble with in the past, Microsoft has only sued Microsoft on the '780 patent.  Barnes & Noble denies that the accused Nook™ and Nook Color™ devices infringe any valid, enforceable claim of the '780 patent.  The '780 patent appears to cover nothing more than placing a loading status icon in the content viewing area of a browser.  In that patent, Microsoft concedes that loading status icons and content viewing areas of a browser were both known in the prior art.  The prior art placed the loading status icon outside of the viewing area, but it is nothing short of obvious to place it in the content viewing area (since there are only two locations for such an icon—either in or out of the content viewing area).

33.     The other patents Microsoft asserts are similarly trivial, not infringed and invalid.  The '372 patent relates to nothing more than a browser that recognizes background images in an electronic document and displays the background images after text.  The patent refers to perception of slow displays involving background images that existed with typical internet connections and processors at the time of filing (i.e. 1996).  To address this problem,

*Barnes & Noble, Inc.'s and barnesandnoble.com*
*LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 16

the '372 patent specification first describes displaying text and then redisplaying the text again after the background image loads.  While this duplicative display may have had some use in the 1990s, it has no value for the connectivity and processors of today used by the Nook™ and Nook Color™ devices.  Neither product infringes any valid, enforceable claim of the '372 patent.

34.     The asserted '522 patent relates to nothing more than putting known tab controls into an operating system for use by all applications, rather than providing these tabs on an application-by-application basis.  However, the specification of the '522 patent makes clear that before the filing of the patent, prior art operating systems were *already* providing applications with a toolbox of common controls to utilize.  While the prior art purportedly did not disclose the claimed tab controls in this toolbox, numerous applications already employed tabs to allow users to navigate between pages of information in the application.  Simply putting existing tab controls into the toolbox already provided by the operating system was not inventive or patentable.  In any event, the Nook™ and Nook Color™ devices do not infringe any valid, enforceable claim of the '522 patent.

35.     The asserted '551 patent relates to using handles to change the size of selection areas for selected text.  By 2000, when the '551 application's provisional was filed, text was routinely selected when reading, review or editing, and handles were routinely used to change the size of selections.  The simple act of using handles for their very purpose–changing the size of selections—was neither novel nor non-obvious.  Neither the Nook™ nor Nook Color™ device includes handles with the functionality required by the '551 patent's claims.  Thus, no valid, enforceable claim of the '551 patent is infringed by these products.

36.     The final asserted patent, the '233 patent, relates to the storing and displaying of annotations of text which is not modifiable.  As noted in other portions of this Answer, Affirmative Defenses, and Counterclaims, the claims of the '233 patent are unenforceable because they were procured via inequitable conduct.  During prosecution, Microsoft and its

*Barnes & Noble, Inc.'s and barnesandnoble.com
LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 17

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington   98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

attorneys failed to disclose a prior art reference, U.S. Patent No. 5,146,552 to Cassorla et al., that the European Patent Office identified as pertinent and invalidating.  Further, Microsoft even failed to disclose the European Patent Office's assessment and description of the prior art, despite the fact that such assessment and description conflicted with Microsoft's representations of the prior art to its invention.  Moreover, in addition to being unenforceable, other prior art renders the '233 patent's claims invalid.  In the '233 patent itself, Microsoft admits that publishing houses wanted their documents to be in the form of non-modifiable text at the time users wanted to annotate.  It was obvious to respond to the demands of both publishing houses and users.  In implementing the concept of annotating non-modifiable documents, Microsoft did not have to devise any unique solutions, but merely applied well known techniques to the problem created by the advent of electronic publishing.  This was nothing more than the utilization of common sense solutions to a problem, and there is nothing patentable about the concepts allegedly covered by this patent.  In any event, neither the Nook™ nor Nook Color™ device employs the subject matter set forth in the '233 patent, or infringes any valid, enforceable claim of that patent.

37.     On information and belief, Microsoft knows that the '372, '780, '522, '551, and '233 patents are of limited scope, do not disclose or claim entire operating systems like Windows Phone 7 or the Android™ Operating System, and do not preclude the use of all other open source operating systems or applications.  Microsoft had no justification to seek to use these patents to preclude the development and advancement of Barnes & Noble's devices as it did in its proposed license.

38.     For instance, at http://blogs.technet.com/b/microsoft_on_the_issues/archive/2011/03/21/android-patent-infringement-licensing-is-the-solution.aspx, Horacio Gutierrez, Microsoft's Corporate Vice President and Deputy General Counsel, described the '372, '780, '522, '551, and '233 patents as only embracing (1) the "display of a webpage's content before the background image is received, allowing users to interact with the page faster," (2) the

*Barnes & Noble, Inc.'s and barnesandnoble.com
LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 18

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

"superimpos[ing of] download status on top of the downloading content", (3) "easy ways to navigate through information provided by their device apps via a separate control window with tabs"; (4) "[p]rovid[ing] users the ability to annotate text without changing the underlying document"; and (5) "[p]ermit[ing] users to easily select text in a document and adjust that selection."  By Microsoft's officer's own description and admission, its asserted patents are not even close to covering the entire functionality of Barnes & Noble's Nook™ and Nook Color™ devices, or of the Android™ Operating System.

39.    Despite this, Microsoft issued press releases after filing this action claiming that the Android™ Operating System generally infringes Microsoft's patents, and that *all device manufacturers employing the Android™ Operating System* must license Microsoft's patents.

40.    Moreover, as explained in other parts of this Answer, Affirmative Defenses, and Counterclaims, the '233 patent – one of the patents Microsoft claims dominates the Android™ Operating System – was procured by inequitable conduct.  This inequitable conduct evinces Microsoft's unclean hands and taints Microsoft's entire portfolio.

41.    Microsoft's patents do not provide the *quid pro quo* to the public of advancing the state of technology commensurate with the scope of market dominance Microsoft appears to seek in the operating system market as a whole.

42.    On information and belief, Microsoft's attempts to dominate and control a market via reference to such patents constitutes a threat to creativity, and is contrary to the central tenets of the U.S. patent system.

43.    Via the license price it demands and the onerous restrictions and termination provisions that would effectively require the negotiation of a new license each and every time a hardware or software update is made, Microsoft is leveraging the '372, '780, '522, '551, and '233 patents and its other patents to render the Android™ Operating System and other open source operating systems uncompetitive and unpalatable vis-à-vis Microsoft's own operating systems and force potential licensees to purchase Windows Phone 7 despite the fact that its

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 19

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

patents claim only trivial and non-essential design elements, not an entire operating system.

Microsoft's Conduct Relating to Other Companies

44.     On information and belief, Microsoft has also attempted to force other companies manufacturing products that use the Android™ Operating System to take expensive licenses to Microsoft's patents, using the same threat of litigation based on trivial patents it made against Barnes & Noble prior to this lawsuit.

45.     On information and belief, one large electronics manufacturer, HTC, agreed to a license involving Microsoft's patents to avoid such a lawsuit, that may have contained controls and restrictions on HTC's activities beyond the scope of Microsoft's patents.

46.     On information and belief, Amazon, who sells the Kindle eReader, entered into a license involving Microsoft's patents that may have contained controls and restrictions on Amazon's activities beyond the scope of Microsoft's patents.

47.     On information and belief, Microsoft's activities have a significant, wide felt, and highly detrimental anticompetitive effect and restrain competition in the market for mobile operating systems by suppressing the use and development of open source mobile operating systems, including the Android™ Operating System, and the development of applications and devices employing the same.

48.     On information and belief, Microsoft's activities are part of Microsoft's campaign to force open source software developers and users to pay expensive license fees (reducing their ability to compete with Microsoft) or to leave the market altogether.

Microsoft's Dominant Position

49.     On information and belief, Microsoft claims to have complete control over the market for open source mobile operating systems, including the Android™ Operating System.

50.     On information and belief, the Android™ Operating System accounts for over 30% of the market for mobile operating systems both in the United States and worldwide.

51.     On information and belief, Microsoft's own mobile operating systems,

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 20

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

including Microsoft Windows Mobile and Windows Phone 7, account for about 10% of the market for mobile operating systems in the United States and over 3% on a worldwide basis. Moreover, on information and belief, Microsoft has recently entered into an agreement with Nokia whereby Nokia will replace its own proprietary Symbian mobile operating system with Microsoft's own mobile device operating system.  When this transition is complete next year, Microsoft's worldwide market share will increase to over 30% independent of its assertion of control of the Android™ Operating System.  As noted in paragraph 9 above, as part of this agreement, Microsoft and Nokia also discussed and apparently agreed on a strategy of coordinating their offensive patent assertion strategies going forward—further demonstrating the dominant position of Microsoft.

52.     In view of Microsoft's unjustified claim of control over the Android™ Operating System and its own Microsoft mobile device operating system products, Microsoft claims to control 40% of the market for mobile operating systems in the United States and will soon claim to control over 65% of the market for mobile operating systems on a worldwide basis.  Microsoft thus has market power with respect to mobile operating systems.

53.     Microsoft's activities constitute patent misuse and render all the asserted claims of the '372, '780, '522, '551, and '233 patents unenforceable.

**Second Affirmative Defense**

**(Non-Infringement)**

54.     Barnes & Noble has not and does not infringe any valid, enforceable claim of the '372, '780, '522, '551, or '233 patent either literally or under the doctrine of equivalents.

**Third Affirmative Defense**

**(Invalidity)**

55.     The claims of the '372, '780, '522, '551, and '233 patents are invalid for failure to comply with one or more of the requirements of 35 U.S.C. § 100 *et seq*., including, but not limited to, §§ 101, 102, 103, and/or 112.

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

**Fourth Affirmative Defense**

**(Failure to Mark)**

56.     Microsoft is not entitled to recover damages occurring prior to notice of the alleged infringement of the '372, '780, '522, '551, and '233 patents for failure to comply with the requirements of Title 35 of the United States Code, including but not limited to § 287.

**Fifth Affirmative Defense**

**(Unenforceability of the '233 Patent Due to Inequitable Conduct)**

57.     On information and belief, the '233 patent is unenforceable due to inequitable conduct because one or more persons involved in the prosecution of the application that issued as the '233 patent violated their duty of candor and good faith in dealing with the United States Patent and Trademark Office (the "PTO") by intentionally and deceptively failing to disclose to the PTO prior art and information material to the patentability of the claims of the '233 patent.

58.     Specifically, on information and belief, during prosecution of the '233 patent, attorneys from the firm Banner & Witcoff, Ltd. involved with the prosecution of the '233 patent, including at least Christopher R. Glembocki, withheld material prior art and other information from the PTO relating to at least asserted claims 21 and 22 with an intent to deceive the PTO and obtain the issuance of claims to which the applicants would not otherwise be entitled.

59.     On information and belief, Mr. Glembocki and others at Banner & Witcoff were involved with the prosecution of the application underlying the '233 patent from its filing on December 7, 1999 until its issuance on October 18, 2005.  Among other things, Mr. Glembocki signed the original December 7, 1999 application, an April 20, 2000 Petition for Extension of Time, an April 20, 2000 Response to Notice to File Missing Parts of Application, and a January 22, 2004 Information Disclosure Statement.

60.     On information and belief, the non-disclosed material prior art and other

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 22

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

information includes at least (a) U.S. Patent No. 5,146,552 to Cassorla et al. (the "'552 Cassorla patent") and (b) various papers issued or submitted in connection with international application number PCT/US00/33081 (the "'081 international application") including (i) a March 26, 2001 international search report, (ii) a January 1, 2002 written opinion, and (iii) a May 5, 2002 international preliminary examination report.

61.     On its face, the '081 international application claims priority to U.S. patent application 09/455,806 (the "'806 application").  The '806 application issued as the '233 patent.  Thus, the '081 international application and '233 patent are related.

62.     On information and belief, Mr. Glembocki was involved in the prosecution of both the '081 international application and the '806 application and is listed on correspondence in both applications' file histories.

63.     On or around March 26, 2001, an international search report issued in connection with the '081 international application.  This international search report listed the '552 Cassorla patent as a "[d]ocument considered to be relevant."  The international search report further stated that the '552 Cassorla patent is a "document of particular relevance" such that "the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone."

64.     On or about January 1, 2002, a written opinion issued in connection with the '081 international application and was mailed to Mr. Glembocki.

65.     Citing the Abstract and column 2, line 5 to column 3, line 34 of the '552 Cassorla patent, the January 1, 2002 written opinion noted that that patent "discloses a method for associating annotations for a certain document (object) adopting the technique of separately storing annotation and its position in order to maintain 'unmodified' the document itself."  Further, it was noted that "[t]his technique corresponds to and has the same effect of the storing of objects in 'non-modifiable' portion of the file to be annotated…."

66.     The January 1, 2002 written opinion also noted that the claims of the '081

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 23

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

international application are not inventive in view of the disclosure of the '552 Cassorla patent.

67.     On or about May 2, 2002, an international preliminary examination report issued in connection with the '081 international application and was mailed to Mr. Glembocki.

68.     The May 2, 2002 international preliminary examination report again cited the '552 Cassorla patent and noted that the claims of the '081 international application are not inventive in view of the disclosure of that patent.

69.     The claims of the '081 international application include many of the limitations found in claims 21 and 22 of the '233 patent.

70.     On information and belief, in view of the March 26, 2001 international search report, January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report, Mr. Glembocki and others involved with the prosecution of the '233 patent knew of the '552 Cassorla patent and its disclosure of "a method for associating annotations for a certain document (object) adopting the technique of separately storing annotation and its position in order to maintain 'unmodified' the document itself" no later than May 5, 2002.

71.     On information and belief, neither Mr. Glembocki nor any other individual involved in the prosecution of the '233 patent disclosed the '552 Cassorla patent or the March 26, 2001 international search report, January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report to the PTO during prosecution of the '233 patent.

72.     On information and belief, the '552 Cassorla patent, March 26, 2001 international search report, January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report were highly material to the prosecution of the '233 patent and were not cumulative to the other prior art and information of record.

73.     More specifically, during prosecution of the '233 patent and in connection with

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 24

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

a December 22, 2003 amendment, applicants attempted to distinguish then pending claims 25 and 26 of the '806 application – which later issued as claims 21 and 22 – from prior art cited by the PTO by arguing that that prior art did not disclose, among other things, the claim limitations requiring "an electronic book including a page having user selectable objects stored in a non-modifiable portion of a file."

74.     As noted by the March 26, 2001 international search report, January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report, the '552 Cassorla patent discloses this same "electronic book including a page having user selectable objects stored in a non-modifiable portion of a file" feature applicants argued was missing from the prior art referenced in the December 22, 2003 amendment.  Thus, the '552 Cassorla patent, along with the January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report, was non-cumulative and would have been highly material to the examiner considering the '233 patent's claims and the applicants' representation regarding the prior art.

75.     Further, the identification of the '552 Cassorla patent as a "document of particular relevance" such that "the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone" in the March 26, 2001 international search report along with the findings in the January 1, 2002 written opinion and May 2, 2002 international preliminary examination report that the claims of the '081 international application are not inventive in view of the disclosure of the '552 Cassorla patent would have been highly material to the examiner considering the '233 patent's claims because none of the other art of record was found to anticipate or render obvious asserted claims 21 and 22 of the '233 patent.

76.     Given the materiality of the '552 Cassorla patent, the March 26, 2001 international search report, January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report and Mr. Glembocki's direct knowledge of these materials, on

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 25

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

information and belief Mr. Glembocki and others involved with the prosecution of the '233 patent withheld these materials with intent to deceive the PTO.

77.     This intentional and deceptive withholding of the '552 Cassorla patent, the March 26, 2001 international search report, the January 1, 2002 written opinion, and the May 5, 2002 international preliminary examination report constitutes inequitable conduct that renders the '233 patent unenforceable.

## **COUNTERCLAIMS**

1.     Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Barnes & Noble, Inc. and barnesandnoble.com LLC (collectively, "Barnes & Noble"), for their Counterclaims against Microsoft Corporation ("Microsoft"), state as follows:

### **The Parties**

2.     Barnes & Noble, Inc. is a corporation organized and existing under the laws of Delaware and has a place of business at 122 Fifth Avenue, New York, New York, 10011.

3.     Barnesandnoble.com LLC is a limited liability corporation organized and existing under the laws of Delaware and has a place of business at 122 Fifth Avenue, New York, New York, 10011.

4.     On information and belief, Microsoft is a corporation organized and existing under the laws of the State of Washington and has a place of business at One Microsoft Way, Redmond, Washington 98052.

### **Nature of Action**

5.     On March 21, 2011, Microsoft filed its Complaint for Patent Infringement alleging that Barnes & Noble infringes certain claims of U.S. Patent Nos. 5,778,372 (the "'372 patent"), 6,339,780 (the "'780 patent"), 5,889,522 (the "'522 patent"), 6,891,551 (the "'551 patent"), 6,957,233 (the "'233 patent").

6.     On information and belief, Microsoft is the owner of the '372, '780, '522,

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 26

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

'551, and '233 patents.

7.      Barnes & Noble seeks entry of declaratory judgment holding (a) that it does not infringe, directly, contributorily, or by inducement, any valid, enforceable claim of the '372, '780, '522, '551, and '233 patents; (b) that the claims of the '372, '780, '522, '551, and '233 patents are invalid; (c) that the claims of the '233 patent are unenforceable due to inequitable conduct; and (d) that the claims of the '372, '780, '522, '551, and '233 patents are unenforceable due to patent misuse.

## Jurisdiction and Venue

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), in that it involves claims arising under the United States Patent Act, 35 U.S.C. § 1 *et seq.*

9.      This Court may declare the rights and other legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is an actual and justiciable controversy between Barnes & Noble and Microsoft that is within the Court's jurisdiction with respect to whether Barnes & Noble infringes any valid, enforceable claim of the '372, '780, '522, '551, and '233 patents, and whether the claims of those patents are invalid and unenforceable.

10.      This Court has personal jurisdiction over Microsoft because, on information and belief, Microsoft's principle place of business is in this judicial district and Microsoft has systematic and continuous contacts in this judicial district, regularly avails itself of the benefits of this judicial district, including the jurisdiction of the courts, and regularly transacts business within this judicial district and derives substantial revenues from this business.

11.      Venue in this judicial district is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim* (2:11-cv-00485 RAJ) – 27

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

**Count I**

**(Counterclaim of Unenforceability of the**

**'372, '780, '522, '551, and '233 Patents Due to Patent Misuse)**

<u>Introduction</u>

12.    Barnes & Noble incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 11 of these Counterclaims.

13.    Microsoft's claims of infringement of the '372, '780, '522, '551, and '233 patents against Barnes & Noble are barred by the doctrine of patent misuse.

14.    Microsoft has impermissibly broadened the physical scope of the '372, '780, '522, '551, and '233 patents in furtherance of a plan or scheme orchestrated by Microsoft and its agents to eliminate or marginalize the competition to Microsoft's own Windows Phone 7 mobile device operating system posed by the open source Android™ Operating System and other open source operating systems.  As part of this scheme, Microsoft has asserted patents that extend only to arbitrary, outmoded, or non-essential design features, but uses these patents to demand that every manufacturer of an Android-based mobile device take a license from Microsoft and pay exorbitant licensing fees or face protracted and expensive patent infringement litigation.  The asserted patents do not have a lawful scope sufficient to control the Android™ Operating System as Microsoft is attempting to do, and Microsoft's misuse of these patents directly harms both competition for and consumers of all eReaders, smartphones, tablet computers and other mobile electronic devices.

<u>Microsoft's Attempt to Control the Android Operating System</u>

15.    Microsoft did not invent, research, develop, or make available to the public mobile devices employing the Android™ Operating System and other open source operating systems, but nevertheless seeks to dominate something it did not invent.  On information and belief, Microsoft intends to take and has taken definite steps towards making competing operating systems such as the Android™ Operating System unusable and unattractive to both

*Barnes & Noble, Inc.'s and barnesandnoble.com*
*LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 28

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

consumers and device manufactures through exorbitant license fees and absurd licensing restrictions that bear no relation to the scope and subject matter of its own patents.

16.   On information and belief, to perpetuate this scheme, Microsoft and its agents, including spokesman and chief executive officer Mr. Steven Ballmer, have publicly stated that through its patents Microsoft can dominate, control, and exclude from the market the Android™ Operating System, other open source operating systems, and open source applications such as Google Chrome.  These statements are unjustified in view of the scope of Microsoft's patents.  Moreover, neither Microsoft nor Mr. Ballmer has ever identified to the American public the basis for these grand assertions of dominance.

17.   On information and belief, Microsoft intends to utilize its patents to control the activities of and extract fees from the designers, developers, and manufacturers of devices, including tablets, eReaders, and other mobile devices, that employ the Android™ Operating System.

18.   On information and belief, Microsoft has falsely and without justification asserted that its patents somehow provide it with the right to prohibit device manufacturers from employing new versions of the Android™ Operating System, or third party software.

19.   Without support or justification, Microsoft has communicated to the public through press releases and other public statements (including press releases relating to this very action) that the Android™ Operating System generally infringes Microsoft's patents, and that all device manufacturers employing the Android™ Operating System must either pay Microsoft's exorbitant licensing fees or face costly and protracted patent infringement litigation.

20.   On information and belief, Microsoft's assertion of complete and total control and dominance over the Android™ Operating System is entirely unjustified and finds no root in any supposed patents identified or even possessed by Microsoft.

21.   On information and belief, as part of Microsoft's recently announced agreement

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 29

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

with Nokia to replace Nokia's Symbian operating system with Microsoft's own mobile device operating system, Microsoft and Nokia discussed and apparently agreed upon a strategy for coordinated offensive use of their patents.  Indeed, in videotaped remarks made two days after the Microsoft-Nokia agreement was announced, Nokia's CEO Stephen Elop confirmed that Microsoft and Nokia had discussed how their combined intellectual property portfolio is "remarkably strong" and that Microsoft and Nokia intended to use this combined portfolio both defensively and offensively.[2]  This type of horizontal agreement between holders of significant patent portfolios is per se illegal under the antitrust laws, threatens competition for mobile device operating systems and is further evidence of Microsoft's efforts to dominate and control Android and other open source operating systems.

Microsoft's Initial Approach to Barnes & Noble

22.     In furtherance of its scheme to dominate, marginalize, and eliminate commercial use of the Android™ Operating System, Microsoft initially contacted Barnes & Noble in 2010, through an e-mail from Rainer Kuehling, Microsoft's Senior Manager of the Microsoft Intellectual Property Licensing Office, to William Lynch, then President of Barnes & Noble.com, stating that Microsoft would like to meet with Barnes & Noble to discuss "patent issues relating to Barnes & Nobles' eReader."

23.     Barnes & Noble and Microsoft then met on July 20, 2010, at the New York offices of Barnes & Noble.com.  The meeting was attended by Dick Greeley, Director of Licensing for the Microsoft Intellectual Property Licensing Office, Carl Brandt, Associate General Counsel for IP and Litigation for Microsoft, Tony Astarita, Vice President of Product Development for Barnes & Noble.com, Bradley A. Feuer, then Acting General Counsel of Barnes & Noble, and outside counsel for Barnes & Noble.  At the meeting, Microsoft alleged that the Nook™ infringed six patents purportedly owned by Microsoft.  Microsoft had prepared claim charts purportedly detailing the alleged infringement but insisted that it would

---

[2] http://www.techeye.net/business/swingin-stephen-elop-confirms-nokia-ms-deal-is-about-patent-protection

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

only share the detailed claim charts if Barnes & Noble agreed to sign a non-disclosure agreement ("NDA") that would cover the claim charts as well as all other aspects of the parties' discussions.  Noting that the patents were public and that the infringement allegations pertained to Barnes & Noble's public product, Barnes & Noble refused to sign an NDA. Insisting that an NDA was necessary, Microsoft discussed the alleged infringement on a high-level basis only.  Microsoft nevertheless maintained that it possessed patents sufficient to dominate and entirely preclude the use of the Android™ Operating System by the Nook™. Microsoft demanded an exorbitant royalty (on a per device basis) for a license to its patent portfolio for the Nook™ device and at the end of the meeting Microsoft stated that it would demand an even higher per device royalty for any device that acted "more like a computer" as opposed to an eReader.

24.    On August 3, 2010, Microsoft sent Barnes & Noble an email purportedly following up on the July 20, 2010 meeting.  The email attached a presentation that contained high level, publicly available information as well as a list of the patents that Microsoft stated were "exemplary patents that read on the Barnes and Noble's Nook device."  The presentation contained a footer stating that the presentation was "Subject to FRE 408."

25.    On August 23, 2010, Mr. Greeley sent an email to Barnes & Noble stating that Microsoft wanted to schedule a follow-up meeting with Barnes & Noble to have a "[d]etailed discussion of Microsoft patents as they pertain to the Nook" and to elicit a "[r]esponse from Barnes and Nobel [sic] to Microsoft's proposed terms."  Mr. Greeley marked the email as "Subject to FRE 408."  Mr. Greeley sent a follow-up email on August 26, 2010, requesting a response to the August 23, 2010 email.  On August 26, 2010, Mr. Feuer responded to Mr. Greeley, informing him that Mr. Astarita was leaving the company and that Barnes & Noble needed to find his replacement for these matters.  Additionally, Mr. Feuer stated in his email that "please keep in mind that we do not consider any of our conversations to be confidential."

26.    On September 30, 2010, Mr. Greeley sent an email to Mr. Feuer regarding

*Barnes & Noble, Inc.'s and barnesandnoble.com*
*LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 31

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

scheduling a further meeting and also stating that if Barnes & Noble would not agree to consider the claim charts as confidential then Microsoft would "need to limit the discussion to the patent numbers" and that "[w]e also want to discuss the licensing terms and would assume that these discussions and any shared agreements will be treated as confidential."

27.   Microsoft and Barnes & Noble exchanged a series of emails attempting to find an agreeable date to meet, which was eventually set for December 16, 2010 at the Barnes & Noble headquarters in New York.  Mr. Greeley exchanged several emails with Mr. Gene DeFelice, who was newly appointed Barnes & Noble General Counsel, as well as Mr. Feuer, pursuant to which Mr. Greeley stated that he had located existing NDAs between Barnes & Noble and Microsoft covering matters that were totally unrelated to the patent issues under discussion.  In a November 30, 2010 email to Mr. DeFelice and Mr. Feuer, Mr. Greeley wrote that the email was subject to "FRE 408 and Microsoft-Barnes & Noble Non-Disclosure Agreement."  Mr. Greeley further stated that Microsoft had not provided the full claim charts to Barnes & Noble because Mr. Feuer "refused to treat them as confidential information under our NDA."

28.   On December 3, 2010, Mr. DeFelice responded to Mr. Greeley's November 30, 2010 email stating, among other things, "I noticed that the heading of your email referred to a Barnes & Noble Non-Disclosure Agreement.  As you know full well, there is no such agreement, and as you correctly note in the body of your email, Brad Feuer has been clear with Microsoft that we are not willing to sign or otherwise agree to a Non-Disclosure Agreement.  Therefore, we ask you to please not try to cloud the record with inaccurate characterizations."  Mr. DeFelice further noted that, as Mr. Feuer had previously advised Microsoft, given the fact that the patents are public "B&N doesn't see anything confidential in allegations of why our marketed device or devices infringe a public patent."

29.   On December 7, 2010, Mr. Greeley sent an email to Mr. DeFelice and Mr. Feuer confirming the December 16, 2010 meeting and acknowledging that "as per your email,

we will not be having this conversation under NDA."

30.     The December 16, 2010 meeting between Microsoft and Barnes & Noble was attended by Mr. Greeley and Mr. Brandt, on behalf of Microsoft, and Mr. DeFelice, Mr. Feuer, and Mr. Jeffrey Snow, on behalf of Barnes & Noble.  Microsoft continued to maintain that its patents were sufficient to dominate and entirely preclude the use of the Android™ Operating System by the Nook™ and also asserted that they would preclude use of Android by Barnes & Noble's new Nook Color™ product.  Barnes & Noble requested that Microsoft set forth the basis for these allegations.  Microsoft, however, continued to insist that it would not provide the basis for its allegations without first entering into a non-disclosure agreement. The parties therefore negotiated a form of NDA at this meeting entitled "Agreement" (the "Agreement").  The Agreement was very limited in scope, with "Confidential Information" defined as "any non-public claim charts provided to BN by Microsoft relating to the patents in dispute, any response(s) or discussions or product information provided by or from BN representatives."

31.     At the meeting, after the Agreement was executed, Microsoft provided Barnes & Noble with the claim charts referenced in the Agreement, which related to five of the six patents Microsoft had originally identified.

32.     Tellingly, although Microsoft had insisted on entering into an NDA covering these claim charts, the charts did not contain confidential information but instead did nothing more than set forth the published claims of certain Microsoft patents on the one hand and publicly known features purportedly employed by the open source Android™ Operating System and the Nook™ on the other hand.

<u>Microsoft's Proposed License</u>

33.     Further evincing its anticompetitive intent to dominate and render the Android™ Operating System uncompetitive, on or around January 6, 2011, Mr. Dick Greeley, Microsoft's Director of Licensing, forwarded Barnes & Noble a proposed patent license

*Barnes & Noble, Inc.'s and barnesandnoble.com*
*LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 33

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1  agreement.

2      34.    Although in a cover e-mail Microsoft labeled the proposed license as

3  "Confidential" and purportedly subject to the Agreement, the proposed patent license is in

4  fact clearly not subject to the Agreement—which, as noted, was limited in scope to

5  discussions concerning claim charts—or to any other non-disclosure agreement between

6  Microsoft and Barnes & Noble.  Microsoft's attempt to cloak its abusive and anticompetitive

7  licensing proposal in confidence by referencing a plainly inapplicable confidentiality

8  agreement is further evidence of Microsoft's unlawful scheme to restrict competition in the

9  mobile operating system market.

10      35.    The proposed patent license presumes that Microsoft possesses a portfolio of

11  patents that dominate and control the Android™ Operating System.

12      36.    The proposed license would have covered the '372,'780, '522, '551, and '233

13  patents asserted in this action, along with other previously identified Microsoft patents,

14  including U.S. Patent Nos. 5,579,517 ("the '517 patent"), 5,652,913 ("the '913 patent"),

15  5,758,352 ("the '352 patent"), 6,791,536 ("the '536 patent"), and 6,897,853 ("the '853

16  patent").  However, without justification, the proposed license would have severely limited,

17  restricted, and in some cases entirely eliminated, Barnes & Noble's ability to upgrade,

18  improve, or continue design work with Nook™ and Nook Color™.

19      37.    After sending the proposed license agreement, Microsoft confirmed the

20  shockingly high licensing fees Microsoft was demanding, reiterating its exorbitant per device

21  royalty for Nook™ , and for the first time demanding a royalty for Nook Color™ which was

22  more than double the per device royalty Microsoft was demanding for Nook™.  On

23  information and belief, the license fees demanded by Microsoft are higher than what

24  Microsoft charges for a license to its entire operating system designed for mobile devices,

25  Windows Phone 7.

26      38.    On information and belief, the proposed license agreement Microsoft sent to

27

*Barnes & Noble, Inc.'s and barnesandnoble.com
LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 34

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

Barnes & Noble on or around January 6, 2011 was Microsoft's standard license agreement signed by others.

The Patents at Issue

39.    The patents that Microsoft has identified to date—including the patents Microsoft identified as part of the discussions between Microsoft and Barnes & Noble that preceded this litigation as well as patents on which Microsoft ultimately sued—do not warrant the dominance of an entire operating system, like the open source Android™ Operating System.   Indeed, although in its earlier discussions Microsoft claimed that the '517, '913, '352, '536, '853, and '780 patents allowed it to dominate and control the Android™ Operating System, when it initiated both the present action and a related action before the U.S. International Trade Commission, it did not allege that the Nook™ and Nook Color™ products infringe the '517, '913, '352, '536, or '853 patents, but instead limited its allegations concerning previously asserted patents to only the '780 patent.

40.    Thus, the '517, '913, '352, '536 and '853 patents appear to be nothing more than a vehicle by which Microsoft is seeking to force device manufacturers such as Barnes & Noble to enter into expensive, overly restrictive, and unjustified license agreements.   The '517, '913, '352, '536, '853, and '780 patents are the antitheses of proof that Microsoft somehow invented and has the right to control the Android™ Operating System and other open source operating systems and applications.

41.    The '517 and '352 patents deal with nothing more than compatibility between file names employed by operating systems used and sold today, and more primitive file names employed by old, unused, and outmoded operating systems.   This is of no importance to either Nook™ or Nook Color™ modern products.   Neither product infringes any valid, enforceable claims of the '517 or '352 patent.

42.    During the discussions, Microsoft also threatened Barnes & Noble with claims of infringement of the '536 and '853 patents which relate only to simulating mouse inputs

*Barnes & Noble, Inc.'s and barnesandnoble.com
LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 35

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

using non-mouse devices.  The '853 patent misrepresented the state of the art at the time the patent was filed by stating that "a need exists for permitting a user to perform all operations of a mouse-type device using a stylus."  This, however, is demonstrably incorrect.  The '536 and '853 patents were filed in November 2000.  Long before that time, numerous systems had been developed that enabled computer users to simulate mouse behavior with touch input devices.  For example, U.S. Patent No. 5,327,161 to Logan et al., entitled "System and Method for Emulating a Mouse Input Device with a Touchpad Input Device" (the "'161 patent"), was issued in 1994, years before the '536 and '853 patents were even filed.  The '161 patent discloses a touchpad input device or touch-sensitive device that "can be used to replace the mouse cursor locator/input device in mouse-driven personal computers."  (Col. 1, ll. 18-20.)  The touchpad in the '161 patent performs functions of a mouse.  Further evincing the lack of inventiveness of the subject matter set forth in the '536 and '853 patents, the '161 patent noted that touchpad technology had been disclosed in patents that issued as early as *1978*.  (*See* Col. 3, ll. 15-22.)  Touchpad technology did not disappear or otherwise fade into the background in the decade between the filing of the '161 patent and Microsoft's own '536 and '853 patents.  A January, 14 1999 New York Times article entitled "Treading on the Mouse's Heels: The Oh-So-Subtle Touch Pad" describes "newer models of touch pads … that … can be trained to recognize handwritten commands."  Moreover, the described touchpad allows one to "slide the finger" across the touchpad "[f]or a large cursor movement," and, just like the '536 patent, the touchpad performs different actions depending on whether a user taps or holds his or her finger on the touchpad surface.  For instance, "[a] double tap equals a double click of the mouse" while the action to "tap once, then lower the finger and leave it down" equals a "highlight and drag."  Further, the '536 and '853 patents relate to a concept that, while long present in the prior art, is lacking in the Nook™ and Nook Color™ devices, which were never designed for use with a mouse in this first instance, never simulate such an input, and thus cannot infringe any valid, enforceable claims of these patents.

*Barnes & Noble, Inc.'s and barnesandnoble.com*
*LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 36

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

43.     Microsoft also threatened Barnes & Noble with claims of infringement of the '913 patent, which relates to storing input/output access factors in a shared data structure, and which clearly could not preclude the use of an entire operating system.  The '913 patent specification is deficient with respect to a written description of the alleged invention and fails to provide sufficient detail for a person of skill in the art to make the subject matter of the claims.  This deficiency renders the patent invalid, and in any event the claims do not cover the Nook™ and Nook Color™ devices to the extent the subject matter can be understood in light of the deficiencies.  Tellingly, Microsoft was never able to fully explain how anything in the Nook™ and Nook Color™ related in any manner to the concepts set forth in the '913 patent.  Neither product  infringes the '913 patent.

44.     Of the patents Microsoft threatened Barnes & Noble with in the past, Microsoft has only sued Microsoft on the '780 patent.  Barnes & Noble denies that the accused Nook™ and Nook Color™ devices infringe any valid, enforceable claim of the '780 patent.  The '780 patent appears to cover nothing more than placing a loading status icon in the content viewing area of a browser.  In that patent, Microsoft concedes that loading status icons and content viewing areas of a browser were both known in the prior art.  The prior art placed the loading status icon outside of the viewing area, but it is nothing short of obvious to place it in the content viewing area (since there are only two locations for such an icon—either in or out of the content viewing area).

45.     The other patents Microsoft asserts are similarly trivial, not infringed and invalid.  The '372 patent relates to nothing more than a browser that recognizes background images in an electronic document and displays the background images after text.  The patent refers to perception of slow displays involving background images that existed with typical internet connections and processors at the time of filing (i.e. 1996).  To address this problem, the '372 patent specification first describes displaying text and then redisplaying the text again after the background image loads.  While this duplicative display may have had some

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1   use in the 1990s, it has no value for the connectivity and processors of today used by the

2   Nook™ and Nook Color™ devices.  Neither product infringes any valid, enforceable claim of

3   the '372 patent.

4       46.     The asserted '522 patent relates to nothing more than putting known tab

5   controls into an operating system for use by all applications, rather than providing these tabs

6   on an application-by-application basis.  However, the specification of the '522 patent makes

7   clear that before the filing of the patent, prior art operating systems were *already* providing

8   applications with a toolbox of common controls to utilize.  While the prior art purportedly did

9   not disclose the claimed tab controls in this toolbox, numerous applications already employed

10  tabs to allow users to navigate between pages of information in the application.  Simply

11  putting existing tab controls into the toolbox already provided by the operating system was

12  not inventive or patentable.  In any event, the Nook™ and Nook Color™ devices do not

13  infringe any valid, enforceable claim of the '522 patent.

14      47.     The asserted '551 patent relates to using handles to change the size of selection

15  areas for selected text.  By 2000, when the '551 application's provisional was filed, text was

16  routinely selected when reading, review or editing, and handles were routinely used to change

17  the size of selections.  The simple act of using handles for their very purpose–changing the

18  size of selections—was neither novel nor non-obvious.  Neither the Nook™ nor Nook

19  Color™ device includes handles with the functionality required by the '551 patent's claims.

20  Thus, no valid, enforceable claim of the '551 patent is infringed by these products.

21      48.     The final asserted patent, the '233 patent, relates to the storing and displaying of

22  annotations of text which is not modifiable.  As noted in other portions of this Answer,

23  Affirmative Defenses, and Counterclaims, the claims of the '233 patent are unenforceable

24  because they were procured via inequitable conduct.  During prosecution, Microsoft and its

25  attorneys failed to disclose a prior art reference, U.S. Patent No. 5,146,552 to Cassorla et al.,

26  that the European Patent Office identified as pertinent and invalidating.  Further, Microsoft

27

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 38

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

even failed to disclose the European Patent Office's assessment and description of the prior

art, despite the fact that such assessment and description conflicted with Microsoft's

representations of the prior art to its invention.  Moreover, in addition to being unenforceable,

other prior art renders the '233 patent's claims invalid.  In the '233 patent itself, Microsoft

admits that publishing houses wanted their documents to be in the form of non-modifiable

text at the time users wanted to annotate.  It was obvious to respond to the demands of both

publishing houses and users.  In implementing the concept of annotating non-modifiable

documents, Microsoft did not have to devise any unique solutions, but merely applied well

known techniques to the problem created by the advent of electronic publishing.  This was

nothing more than the utilization of common sense solutions to a problem, and there is

nothing patentable about the concepts allegedly covered by this patent.  In any event, neither

the Nook™ nor Nook Color™ device employs the subject matter set forth in the '233 patent,

or infringes any valid, enforceable claim of that patent.

49.    On information and belief, Microsoft knows that the '372, '780, '522, '551, and

'233 patents are of limited scope, do not disclose or claim entire operating systems like

Windows Phone 7 or the Android™ Operating System, and do not preclude the use of all

other open source operating systems or applications.  Microsoft had no justification to seek to

use these patents to preclude the development and advancement of Barnes & Noble's devices

as it did in its proposed license.

50.    For instance, at http://blogs.technet.com/b/microsoft_on_the_issues/archive/

2011/03/21/android-patent-infringement-licensing-is-the-solution.aspx, Horacio Gutierrez,

Microsoft's Corporate Vice President and Deputy General Counsel, described the '372, '780,

'522, '551, and '233 patents as only embracing (1) the "display of a webpage's content before

the background image is received, allowing users to interact with the page faster," (2) the

"superimpos[ing of] download status on top of the downloading content", (3) "easy ways to

navigate through information provided by their device apps via a separate control window

*Barnes & Noble, Inc.'s and barnesandnoble.com
LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 39

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

with tabs"; (4) "[p]rovid[ing] users the ability to annotate text without changing the underlying document"; and (5) "[p]ermit[ing] users to easily select text in a document and adjust that selection."  By Microsoft's officer's own description and admission, its asserted patents are not even close to covering the entire functionality of Barnes & Noble's Nook™ and Nook Color™ devices, or of the Android™ Operating System.

51.     Despite this, Microsoft issued press releases after filing this action claiming that the Android™ Operating System generally infringes Microsoft's patents, and that *all device manufacturers employing the Android™ Operating System* must license Microsoft's patents.

52.     Moreover, as explained in other parts of this Answer, Affirmative Defenses, and Counterclaims, the '233 patent – one of the patents Microsoft claims dominates the Android™ Operating System – was procured by inequitable conduct.  This inequitable conduct evinces Microsoft's unclean hands and taints Microsoft's entire portfolio.

53.     Microsoft's patents do not provide the *quid pro quo* to the public of advancing the state of technology commensurate with the scope of market dominance Microsoft appears to seek in the operating system market as a whole.

54.     On information and belief, Microsoft's attempts to dominate and control a market via reference to such patents constitutes a threat to creativity, and is contrary to the central tenets of the U.S. patent system.

55.     Via the license price it demands and the onerous restrictions and termination provisions that would effectively require the negotiation of a new license each and every time a hardware or software update is made, Microsoft is leveraging the '372, '780, '522, '551, and '233 patents and its other patents to render the Android™ Operating System and other open source operating systems uncompetitive and unpalatable vis-à-vis Microsoft's own operating systems and force potential licensees to purchase Windows Phone 7 despite the fact that its patents claim only trivial and non-essential design elements, not an entire operating system.

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 40

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1  <u>Microsoft's Conduct Relating to Other Companies</u>

2      56.     On information and belief, Microsoft has also attempted to force other

3  companies manufacturing products that use the Android™ Operating System to take

4  expensive licenses to Microsoft's patents, using the same threat of litigation based on trivial

5  patents it made against Barnes & Noble prior to this lawsuit.

6      57.     On information and belief, one large electronics manufacturer, HTC, agreed to a

7  license involving Microsoft's patents to avoid such a lawsuit, that may have contained

8  controls and restrictions on HTC's activities beyond the scope of Microsoft's patents.

9      58.     On information and belief, Amazon, who sells the Kindle eReader, entered into

10  a license involving Microsoft's patents that may have contained controls and restrictions on

11  Amazon's activities beyond the scope of Microsoft's patents.

12      59.     On information and belief, Microsoft's activities have a significant, wide felt,

13  and highly detrimental anticompetitive effect and restrain competition in the market for

14  mobile operating systems by suppressing the use and development of open source mobile

15  operating systems, including the Android™ Operating System, and the development of

16  applications and devices employing the same.

17      60.     On information and belief, Microsoft's activities are part of Microsoft's

18  campaign to force open source software developers and users to pay expensive license fees

19  (reducing their ability to compete with Microsoft) or to leave the market altogether.

20  <u>Microsoft's Dominant Position</u>

21      61.     On information and belief, Microsoft claims to have complete control over the

22  market for open source mobile operating systems, including the Android™ Operating System.

23      62.     On information and belief, the Android™ Operating System accounts for over

24  30% of the market for mobile operating systems both in the United States and worldwide.

25      63.     On information and belief, Microsoft's own mobile operating systems,

26  including Microsoft Windows Mobile and Windows Phone 7, account for about 10% of the

27

*Barnes & Noble, Inc.'s and barnesandnoble.com*
*LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 41

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

market for mobile operating systems in the United States and over 3% on a worldwide basis. Moreover, on information and belief, Microsoft has recently entered into an agreement with Nokia whereby Nokia will replace its own proprietary Symbian mobile operating system with Microsoft's own mobile device operating system.  When this transition is complete next year, Microsoft's worldwide market share will increase to over 30% independent of Microsoft's claim that it controls the Android™ Operating System.  As noted in paragraph 21 above, as part of this agreement, Microsoft and Nokia also discussed and apparently agreed on a strategy of coordinating their offensive patent assertion strategies going forward—further demonstrating the dominant position of Microsoft.

64.     In view of Microsoft's unjustified claim of control over the Android™ Operating System and its own Microsoft mobile device operating system products, Microsoft claims to control 40% of the market for mobile operating systems in the United States and will soon claim to control over 65% of the market for mobile operating systems on a worldwide basis.  Microsoft thus has market power with respect to mobile operating systems. Microsoft's activities constitute patent misuse and render all the asserted claims of the '372, '780, '522, '551, and '233 patents unenforceable.

## Count II

## (Counterclaim of Non-Infringement

## of the '372, '780, '522, '551, and '233 Patents)

65.     Barnes & Noble incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 64 of these Counterclaims.

66.     Barnes & Noble has not infringed and does not infringe any valid, enforceable claim of the '372, '780, '522, '551, or '233 patents.

67.     Absent a declaration that Barnes & Noble does not infringe the '372, '780, '522, '551, and '233 patents, Microsoft will continue to wrongfully assert the '372, '780, '522, '551, and '233 patents against Barnes & Noble in violation of the laws and contrary to

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 42

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

the public policy of the United States of America, and will thereby continue to cause Barnes & Noble irreparable injury and damage.

## Count III

### (Counterclaim of Invalidity

### of the '372, '780, '522, '551, and '233 Patents)

68.     Barnes & Noble incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 67 of these Counterclaims.

69.     The claims of the '372, '780, '522, '551, and '233 patents are invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in the United States Patent Laws, Title 35 U.S.C. §§ 101, 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

70.     Absent a declaration that the claims of the '372, '780, '522, '551, and '233 patents are invalid, Microsoft will continue to wrongfully assert the '372, '780, '522, '551, and '233 patents against Barnes & Noble in violation of the laws and contrary to the public policy of the United States of America, and will thereby continue to cause Barnes & Noble irreparable injury and damage.

## Count IV

### (Counterclaim of Unenforceability of the

### '233 Patent Due to Inequitable Conduct)

71.     Barnes & Noble incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 70 of these Counterclaims.

72.     On information and belief, the '233 patent is unenforceable due to inequitable conduct because one or more persons involved in the prosecution of the application that issued as the '233 patent violated their duty of candor and good faith in dealing with the United States Patent and Trademark Office (the "PTO") by intentionally and deceptively failing to disclose to the PTO prior art and information material to the patentability of the

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 43

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

claims of the '233 patent.

73.     Specifically, on information and belief, during prosecution of the '233 patent, attorneys from the firm Banner & Witcoff, Ltd. involved with the prosecution of the '233 patent, including at least Christopher R. Glembocki, withheld material prior art and other information from the PTO relating to at least asserted claims 21 and 22 with an intent to deceive the PTO and obtain the issuance of claims to which the applicants would not otherwise be entitled.

74.     On information and belief, Mr. Glembocki and others at Banner & Witcoff were involved with the prosecution of the application underlying the '233 patent from its filing on December 7, 1999 until its issuance on October 18, 2005.  Among other things, Mr. Glembocki signed the original December 7, 1999 application, an April 20, 2000 Petition for Extension of Time, an April 20, 2000 Response to Notice to File Missing Parts of Application, and a January 22, 2004 Information Disclosure Statement.

75.     On information and belief, the non-disclosed material prior art and other information includes at least (a) U.S. Patent No. 5,146,552 to Cassorla et al. (the "'552 Cassorla patent") and (b) various papers issued or submitted in connection with international application number PCT/US00/33081 (the "'081 international application") including (i) a March 26, 2001 international search report, (ii) a January 1, 2002 written opinion, and (iii) a May 5, 2002 international preliminary examination report.

76.     On its face, the '081 international application claims priority to U.S. patent application 09/455,806 (the "'806 application").  The '806 application issued as the '233 patent.  Thus, the '081 international application and '233 patent are related.

77.     On information and belief, Mr. Glembocki was involved in the prosecution of both the '081 international application and the '806 application and is listed on correspondence in both applications' file histories.

78.     On or around March 26, 2001, an international search report issued in

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
*(2:11-cv-00485 RAJ) – 44*

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

connection with the '081 international application.  This international search report listed the '552 Cassorla patent as a "[d]ocument considered to be relevant."  The international search report further stated that the '552 Cassorla patent is a "document of particular relevance" such that "the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone."

79.     On or about January 1, 2002, a written opinion issued in connection with the '081 international application and was mailed to Mr. Glembocki.

80.     Citing the Abstract and column 2, line 5 to column 3, line 34 of the '552 Cassorla patent, the January 1, 2002 written opinion noted that that patent "discloses a method for associating annotations for a certain document (object) adopting the technique of separately storing annotation and its position in order to maintain 'unmodified' the document itself."  Further, it was noted that "[t]his technique corresponds to and has the same effect of the storing of objects in 'non-modifiable' portion of the file to be annotated…."

81.     The January 1, 2002 written opinion also noted that the claims of the '081 international application are not inventive in view of the disclosure of the '552 Cassorla patent.

82.     On or about May 2, 2002, an international preliminary examination report issued in connection with the '081 international application and was mailed to Mr. Glembocki.

83.     The May 2, 2002 international preliminary examination report again cited the '552 Cassorla patent and noted that the claims of the '081 international application are not inventive in view of the disclosure of that patent.

84.     The claims of the '081 international application include many of the limitations found in claims 21 and 22 of the '233 patent.

85.     On information and belief, in view of the March 26, 2001 international search report, January 1, 2002 written opinion, and May 5, 2002 international preliminary

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 45

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

examination report, Mr. Glembocki and others involved with the prosecution of the '233 patent knew of the '552 Cassorla patent and its disclosure of "a method for associating annotations for a certain document (object) adopting the technique of separately storing annotation and its position in order to maintain 'unmodified' the document itself" no later than May 5, 2002.

86.     On information and belief, neither Mr. Glembocki nor any other individual involved in the prosecution of the '233 patent disclosed the '552 Cassorla patent or the March 26, 2001 international search report, January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report to the PTO during prosecution of the '233 patent.

87.     On information and belief, the '552 Cassorla patent, March 26, 2001 international search report, January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report were highly material to the prosecution of the '233 patent and were not cumulative to the other prior art and information of record.

88.     More specifically, during prosecution of the '233 patent and in connection with a December 22, 2003 amendment, applicants attempted to distinguish then pending claims 25 and 26 of  the '806 application – which later issued as claims 21 and 22 – from prior art cited by the PTO by arguing that that prior art did not disclose, among other things, the claim limitations requiring "an electronic book including a page having user selectable objects stored in a non-modifiable portion of a file."

89.     As noted by the March 26, 2001 international search report, January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report, the '552 Cassorla patent discloses this same "electronic book including a page having user selectable objects stored in a non-modifiable portion of a file" feature applicants argued was missing from the prior art referenced in the December 22, 2003 amendment.  Thus, the '552 Cassorla patent, along with the January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report, was non-cumulative and would have been highly material to

*Barnes & Noble, Inc.'s and barnesandnoble.com
LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 46

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

the examiner considering the '233 patent's claims and the applicants' representation regarding the prior art.

90.     Further, the identification of the '552 Cassorla patent as a "document of particular relevance" such that "the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone" in the March 26, 2001 international search report along with the findings in the January 1, 2002 written opinion and May 2, 2002 international preliminary examination report that the claims of the '081 international application are not inventive in view of the disclosure of the '552 Cassorla patent would have been highly material to the examiner considering the '233 patent's claims because none of the other art of record was found to anticipate or render obvious asserted claims 21 and 22 of the '233 patent.

91.     Given the materiality of the '552 Cassorla patent, the March 26, 2001 international search report, January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report and Mr. Glembocki's direct knowledge of these materials, on information and belief Mr. Glembocki and others involved with the prosecution of the '233 patent withheld these materials with intent to deceive the PTO.

92.     This intentional and deceptive withholding of the '552 Cassorla patent, the March 26, 2001 international search report, the January 1, 2002 written opinion, and the May 5, 2002 international preliminary examination report constitutes inequitable conduct that renders the '233 patent unenforceable.

93.     Absent a declaration that the claims of the '233 patent are unenforceable, Microsoft will continue to wrongfully assert the '233 patent against Barnes & Noble in violation of the laws and contrary to the public policy of the United States of America, and will thereby continue to cause Barnes & Noble irreparable injury and damage.

*Barnes & Noble, Inc.'s and barnesandnoble.com
LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 47

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington   98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

## **PRAYER FOR RELIEF**

WHEREFORE, Barnes & Noble prays for entry of judgment:

A.     Denying all relief sought by Microsoft in its Complaint;

B.     Dismissing Microsoft's claims with prejudice;

C.     Declaring the asserted claims of the '372, '780, '522, '551, and '233 patents to be not infringed, invalid, and unenforceable;

D.     Awarding Barnes & Noble the cost of this suit; and

E.     Declaring this suit to be exceptional, and awarding Barnes & Noble its attorneys' fees and such other and further relief as the Court deems just and appropriate.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 48

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1

## DEMAND FOR JURY TRIAL

2

Barnes & Noble demands a trial by jury on all issues so triable.

3

DATED this 25th day of April, 2011.

4

HILLIS CLARK MARTIN & PETERSON P.S.

5

By       s/ Louis D. Peterson

6
Louis D. Peterson, WSBA #5776
Michael R. Scott, WSBA #12822

7
Mary E. Crego, WSBA #31593
Hillis Clark Martin & Peterson P.S.

8
1221 Second Avenue, Suite 500
Seattle WA 98101-2925

9
Telephone:  (206) 623-1745
Facsimile:  (206) 623-7789

10
Email:  ldp@hcmp.com; mrs@hcmp.com;
              mec@hcmp.com

11
KENYON & KENYON LLP
(ADMITTED PRO HAC VICE)

12
Richard L. DeLucia
A. Antony Pfeffer

13
Kenyon & Kenyon LLP
One Broadway

14
New York, NY 10004-1007
Telephone:  (212) 425-7200

15
Facsimile:  (212) 425-5288
Email:  rdelucia@kenyon.com;

16
            apfeffer@kenyon.com

17
KENYON & KENYON LLP
APPLICATION TO APPEAR PRO HAC VICE PENDING

18
Peter T. Barbur

19
CRAVATH, SWAINE, & MOORE LLP

20
Worldwide Plaza
825 Eighth Avenue

21
New York, N.Y. 10019-7475

22
Phone: 212.474.1000
Fax: 212.474.3700

23
pbarbur@cravath.com

24
Attorneys for Defendants
Barnes & Noble, Inc. and barnesandnoble.com LLC

25

26

27

*Barnes & Noble, Inc.'s and barnesandnoble.com*
*LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 49

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington   98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of April, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Shane P. Cramer - shanec@dhlt.com,yvettec@dhlt.com

T. Andrew Culbert - andycu@microsoft.com

Arthur W. Harrigan , Jr. - arthurh@dhlt.com,vickyc@dhlt.com,lindab@dhlt.com

David E. Killough - davkill@microsoft.com,davkill@comcast.net

Christopher T Wion - chrisw@dhlt.com,lindab@dhlt.com

DATED this 25th day of April, 2011 at Seattle, Washington.

By___s/ Louis D. Peterson_____
        Louis D. Peterson, WSBA #5776
        1221 Second Avenue, Suite 500
        Seattle WA 98101-2925
        Telephone:  (206) 623-1745
        Facsimile:  (206) 623-7789
        Email:  ldp@hcmp.com

*Barnes & Noble, Inc.'s and barnesandnoble.com LLC's Answer and Counterclaim*
(2:11-cv-00485 RAJ) – 50

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789